Advertising Co. v. Bradshaw, Sec. of Transportation

NATIONAL ADVERTISING COMPANY v. THOMAS W. BRADSHAW, JR., AS SECRETARY OF TRANSPORTATION OF THE STATE OF NORTH CAROLINA

No. 7910SC1080

(Filed 5 August 1980)

1. Highways and Cartways § 2.1– Outdoor Advertising Control Act – violation – no administrative hearing provided

There was no provision within the Outdoor Advertising Control Act or the administrative regulations published pursuant to the Act which required or provided for anything other than a written administrative appeal to the Secretary of Transportation, and petitioner therefore was not entitled to any administrative hearing by the Secretary; similarly, the Administrative Procedure Act did not apply in this case because there was no statute or administrative rule which required the Department of Transportation to make an agency decision after providing an opportunity for an adjudicatory hearing.

2. Highways and Cartways § 2.1– Outdoor Advertising Control Act – due process of law not denied

There was no merit to petitioner's contention that the Outdoor Advertising Control Act and the regulations issued pursuant thereto deprived petitioner of due process of law, since petitioner was specifially provided with the opportunity to have his position heard in a de novo proceeding before a trial judge.

3. Highways and Cartways § 2.1– outdoor advertising sign permit revoked – nonconforming sign destroyed by windstorm – no re-erection permitted

Where petitioner's permit for an outdoor advertising sign was revoked because damages exceeded 50% of the initial value of the sign, the sign had been "destroyed" by a windstorm, and it was a nonconforming sign which could not legally be re-erected, there was no merit to petitioner's contention that his evidence showed that the cost of repairing the sign was less than 50% of the cost of replacing the sign, that the sign was not destroyed, and that therefore the permit for the sign was improperly revoked, since (1) petitioner did not provide any evidence of the inital value of the sign, and it was the initial value, not the replacement value, which was the figure for comparison under the regulation in question; (2) the definition of destroyed sign in the regulation in question specifically included a sign which had been completely blown down, even though one of the support poles, though snapped at five to six feet above the ground level, was still standing; and (3) petitioner failed to make any argument that the sign was not "nonconforming" or that the sign was not "re-erected" after the storm, the re-erecting in this case not being a mere "normal repair" within the exception to the definition of repair in the challenged regulation.

APPEAL by respondent from *Bailey, Judge.* Judgment entered 4 October 1979 in Superior Court, WAKE County. Heard in the Court of Appeals on 12 May 1980.

The petitioner-appellee is a business corporation which is engaged in the erection and maintenance of outdoor advertising signs. The respondent-appellant is the duly appointed Secretary of the Department of Transportation of the State of North Carolina.

In 1967 the General Assembly enacted the Outdoor Advertising Control Act, now codified as Article 11 of Chapter 136 of the North Carolina General Statutes. Pursuant to this authority the Department of Transportation issued regulations codified in Subchapter 2H of Title 19 of the North Carolina Administrative Code and also published its *Outdoor Advertising Manual* (see footnote 1 below). In accordance with these rules and regulations, the petitioner-appellee submitted to the Department of Transportation an application and fees for a permit for one of its signs which had been erected adjacent to U.S. Route One near Lakeview, North Carolina. A permit, No. US-0001-56044, was issued for the "nonconforming" sign by virtue of a "grandfather clause."

On or about January 25 or 26, 1978 employees of the North Carolina Department of Transportation discovered that the petitioner-appellee's sign had been blown down by high winds. The poles upon which the sign was attached were snapped and broken, one at the ground level and one about five feet above the ground. The panels of the sign were also on the ground.

On 9 February 1978 notification was mailed by a District Engineer of the Department of Transportation to the petitioner advising the petitioner that its Permit No. US-0001-56044 was revoked because "more than 50 percent of the sign was destroyed" and it could not be re-erected because it was a nonconforming sign.

Following the revocation notice, the sign was repaired and re-erected by splinting the pole that was broken above the ground surface, by replacing the pole that was broken at the

ground level, and by reattaching the sign to these poles, all at a cost of $85.03. The cost of replacing the sign would have been $263.66.

On 6 March 1978, the petitioner, pursuant to G.S. 136-134, appealed the decision of the District Engineer to the Secretary of Transportation. Without giving the petitioner any opportunity to be heard, except as set forth in petitioner's letter of appeal, the Secretary of Transportation, on 20 March 1978 wrote to petitioner and affirmed the decision of the District Engineer. The Secretary's letter provided in pertinent part:

"Your outdoor advertising permit was revoked by District Engineer Beck by reason of the fact that your sign was totally destroyed and sustained damages in excess of 50 percent of the initial value of the sign.

During a routine investigation of outdoor advertising sign inventories, following the wind storm of January 25-26, 1978, Department of Transportation employees discovered the sign allowed by permit number US-0001-56044 to be completely on the ground. All evidence pointed to the fact that the sign had been blown down by high winds. Photographs taken at the time of inspection indicate all sign support posts were down and some of the posts were twisted and splintered showing failure under torque and/or bending stresses.

The North Carolina Administrative Code defines a destroyed sign as, 'A sign no longer in existence due to factors other than vandalism or other criminal or tortuous [sic] acts. An example of a destroyed sign would be a sign which has been completely blown down by the wind.' 'Completely blown down' is interpreted to mean that the entire sign structure, including sign support posts, has been blown down.

In accordance with this interpretation, sign permits must be revoked for those non-conforming signs and signs

conforming by virtue of the 'Grandfather Clause', which have been completely blown down.

It is, therefore, my conclusion that the sign was in fact completely blown down by high winds and, pursuant to the rules and regulations promulgated by the Board of Transportation, cannot be legally re-erected."

Pursuant to G.S. 136-134.1, the petitioner appealed to the Superior Court. The Superior Court held that the *Outdoor Advertising Manual* aand the relevant portions of the North Carolina Administrative Code are unconstitutional because they do not allow the aggrieved sign owner to be heard or to present evidence at the stage of the administrative proceeding. The Superior Court also held that the sign had not been destroyed and that the administrative finding that the sign had been destroyed was erroneous and exceeded the agency's legal authority. The Court ordered the reinstatement of the petitioner's sign permit and the Secretary now appeals this ruling.

*Attorney General Edmisten by Assistant Attorney General Thomas H. Davis, Jr. for respondent appellant.*

*Bailey, Dixon, Wooten, McDonald & Fountain by Kenneth Wooten, Jr. and Gary S. Parsons for petitioner appellee.*

CLARK, Judge.

[1] This case presents several questions of first impression concerning the interpretation and operation of the Outdoor Advertising Control Act, N.C. Gen. Stat. §§ 136-126 to 136-140 (as amended, effective 1 July 1977, 1977 N.C. Sess. Laws, Ch. 464). The first question is whether the petitioner-appellee was entitled to any administrative hearing by the Secretary of Transportation pursuant to the provisions of the Outdoor Advertising Control Act, *supra,* or the Administrative Procedure Act, N.C. Gen. Stat. Ch. 150A. The answer to this question is "no." We can find no provision within the Outdoor Advertising Control Act, or the administrative regulations published pursuant to

the Act[1] which require or provide for anything other than a written administrative appeal to the Secretary of Transportation. N.C. Gen. Stat. § 136-134; 19 N.C.A.C. 2H.0212; 19A N.C.A.C. 2E.0213 (language almost identical).

Similarly, the Administrative Procedure Act does not apply in the instant case because there is no statute or administrative rule which "requir[es] by law" the Department of Transportation to make an agency decision after providing "an opportunity for an adjudicatory hearing," N.C. Gen. Stat. § 150A-2(2) (definition of "contested case"), and the subject controversy is therefore not a "contested case" within the meaning of N.C. Gen. Stat. § 150A-23 which provides for administrative hearings in "contested cases." In *Orange County v. Board of Transportation*, 46 N.C. App. 350, 265 S.E. 2d 890 (1980), we held that an environmental challenge to action by the State highway department under the North Carolina Environmental Policy Act involved a "contested case" where the Department of Transportation was acting, as here, pursuant to its authority under Chapter 136 of the General Statutes (as opposed to under Chapter 20, where the Department is exempted from the Administrative Procedure Act, N.C. Gen. Stat. § 150A-1(a)). *Orange County*, however, involved a specific statutory overlay in which the Environmental Protection Act gave the Department of Administration additional authority to publish rules which, in

---

[1]The administrative regulations first became effective on 15 October 1972. *See, Days Inn of America, Inc. v. Board of Transportation*, 24 N.C. App. 636, 211 S.E. 2d 864 (1975); *Bracey Advertising Company, Inc. v. North Carolina Department of Transportation*, 35 N.C. App. 226, 241 S.E. 2d 146 (1978). These regulations were codified in the North Carolina Administrative Code, Title 19, Chapter 2, Subchapter 2H, effective 1 February 1976, and amended effective 7 January 1977. The regulations, including the 1977 amendments, were published by the Department of Transportation in the *Outdoor Advertising Manual* (1977). The regulations were again amended on 1 June 1978. More recently the regulations have been recodifed as Subchapter 2E of Chapter 19A of the North Carolina Administrative Code, effective 1 July 1978. Since the letter from the District Engineer was dated 9 February 1978 and the letter from the Secretary of Transportation was written on 20 March 1978, we are confined to interpret the regulations as they were codified under Chapter 19 of the Administrative Code in January 1977. We do note, however, that we find no difference between the language as now codified under Chapter 19A which would materially affect the outcome of this decision.

Advertising Co. v. Bradshaw, Sec. of Transportation

turn, subjected the actions of the Board of Transportation to the Administrative Procedure Act. The opinion went on to explain: "Were this case one which did not involve the North Carolina Environmental Protection Act we would have no doubt that the highway location decision did *not* involve a 'contested case.' Generally speaking, the Board of Transportation does not hold adjudicatory proceedings." 46 N.C. App. at 374, 265 S.E. 2d at 906. Similarly, we hold that the action of the Secretary of Transportation in reviewing a written appeal from a decision of the District Engineer does not require an adjudicatory hearing and does not trigger the provisions of the Administrative Procedure Act.

[2] Nor do we see any merit in either the petitioner-appellee's contention, or the ruling of the trial court below, that the Outdoor Advertising Act and the regulations issued pursuant thereto deprive the appellees of due process of law. On the contrary, N.C. Gen. Stat. § 136-134.1, which preempts N.C. Gen. Stat. § 150A-43, specifically provides the appellee with the opportunity to have his position heard in a *de novo* proceeding before a trial judge. At such proceeding the petitioner is not limited to the evidence or documents contained in the administrative record (as is the general rule under N.C. Gen. Stat. § 150A-50, *but see* N.C. Gen. Stat. § 150A-49). We fail to see where the appellee has been denied any due process at all. On the contrary, the right to a trial *de novo* before a trial court is the epitome of due process.

We now turn to the substantive question involving the application of the administrative regulations to the facts of this case. The following definitions in 19 N.C.A.C. 2H are apposite.

".0109 ERECT

To construct, build, *raise*, assemble, place, affix, attach, create, draw or in any way bring into being or establish, but it shall not include any of the foregoing activities when performed as an incident to the change of advertising message or *normal* maintenance or repair of a sign structure." (Emphasis supplied). [*See, also,* N.C. Gen. Stat. § 136-128(.01).]

".0123 NONCONFORMING SIGN

A sign which was lawfully erected but which does not comply with the provisions of state law or state rules and regulations passed at a later date or which later fails to comply with state law or state rules or regulations due to changed conditions. Illegally *erected* signs or maintained signs are not nonconforming signs." (Emphasis supplied.) *[See, also,* N.C. Gen. Stat. § 136-128(2a).]

".0130 DESTROYED SIGN

A sign no longer in existence due to factors other than vandalism or other criminal or tortious acts. As example of a destroyed sign would be a sign which has also been completely blown down by the wind." *[See, also,* 19A N.C.A.C. 2E.0201(v).]

".0132 SIGN CONFORMING BY VIRTUE OF THE 'GRANDFATHER CLAUSE.'

A sign legally erected prior to the effective date of the Outdoor Advertising Control Act in a zoned or unzoned commercial or industrial area which does not meet the standards for size, spacing and lighting passed at a later date." *[See, also,* 19A N.C.A.C. 2E.0201(x).]

There is no doubt that petitioner's sign was a sign which "conform[ed] by virtue of the Grandfather Clause." The only question is whether the damage to the sign in January 1976 was such that, pursuant to the Act and the administrative regulations, the sign could not be repaired, replaced, or re-erected, and consequently, that petitioner's permit should have been revoked for nonconformance. If the permit were properly revoked, then the subsequent act of erecting or maintaining the sign would be illegal.

The statutory scheme is as follows: N.C. Gen. Stat. § 136-130 provides the Department of Transportation with the authority to promulgate rules and regulations concerning: (1) outdoor advertising signs along the right-of-way of interstate or prim-

ary highways in this State; (2) "the specific requirements and procedures for obtaining a permit for outdoor advertising, as required in G.S. 136-133"; and (3) "for the administrative procedures for appealing a decision at the agency level to refuse to grant or in revoking a permit previously issued." N.C. Gen. Stat. § 136-133 further provides, in effect, that no sign along a primary highway in the State may be erected and maintained except upon a permit issued by the Department of Transportation, which permit shall be valid until revoked for nonconformance with the Act or the rules and regulations promulgated by the Department of Transportation. N.C. Gen. Stat. §§ 136-131 and -132 also provide that the Department of Transporation may, after using the procedure for condemnation proceedings, acquire by purchase, gift or condemnation all existing, nonconforming advertising. However, if the sign be illegal, that is, if the sign be "erected or maintained" in violation of the Act or the rules and regulations issued pursuant to the Act, or if the sign be "maintained without a permit regardless of the date of erection," the owner must remove it or the State may remove the sign at the owner's expense. N.C. Gen. Stat. § 136-134.

When, then, may a permit for outdoor advertising be revoked? Section 2H.0209 of Chapter 19 of the Administrative Code, effective 7 January 1977 and recodified as Section 2E.0210 of Chapter 19A, provides in relevant part:

".0209 REVOCATION OF PERMIT

Any valid permit issued for a lawful outdoor advertising structure shall be revoked by the appropriate District Engineer for any one of the following reasons:

\*   \*   \*   \*

(6) Failure to maintain an outdoor advertising structure classified as nonconforming so as to allow the structure to remain substantially the same as it was in existence on the date of the issuance of a valid permit. Extension or enlargment of the sign is a change in the existing use. *Replacement, rebuilding or re-erecting, is a change in the existing use.*

Exception is made for the rebuilding or re-erecting of signs which have been vandalized or subject to other criminal or tortious act.

\* \* \* \*

(12)Abandonment, discontinuance or *destruction* of a sign,

(13)Making repairs to a nonconforming sign or a sign conforming by virtue of the grandfatner clause which exceed 50 percent of the initial value of the sign *as determined by the district engineer*. Total repairs during any twelve consecutive months may not exceed 50 percent of this initial value of the sign. To avoid liability under this clause, the advertiser should contact the district engineer prior to making any major repairs to discuss the scope of the proposed maintenance improvements. In the event a district engineer determines needed repairs to a *nonconforming* sign will exceed 50 percent of the value of the sign, he will contact the Right-of-Way Branch to consider purchase of the sign contingent upon funding availability." (Emphasis supplied.)

In his petition, the petitioner stated that the letter from the District Engineer gave two reasons for revoking the permit: (1) "more than fifty percent of the sign was destroyed" and (2) the sign was a nonconforming sign which could not be re-erected. The Secretary of Transportation in turn gave these reasons for revoking the permit: (1) damages exceeded 50 percent of the initial value of the sign; (2) the sign had been "destroyed" according to the definitions; and (3) it was a nonconforming sign which could not legally be re-erected.

[3] The petitioner contends that his evidence shows that the cost of repairing the sign was less than fifty percent of the *cost of replacing* the sign, that the sign was not "destroyed" and that therefore the permit for the sign was improperly revoked. We do not agree.

First, the petitioner did not provide any evidence of the *initial value* of the sign, and it is the initial value, not the replacement value, which is the figure for comparison under 19 N.C.A.C. 2H.0209(13). Moreover, the determination was not made by the District Engineer. Even if the $263.66 figure given by petitioner as the cost for replacing the sign were representative of its initial value, subsection (13) is not the only ground which can be or was asserted by the State in support of its action to revoke the permit.

Second, 19 N.C.A.C. 2H.0209(12), *supra*, allows a permit to be revoked upon the "destruction" of a sign. "Destruction" is merely the nominative form of the verb "destroy" and the definition of "destroyed sign," provided in 19 N.C.A.C. 2H.0130, *supra*, specifically includes "a sign which has been completely blown down by the wind." The petitioner argues that the sign was not "completely blown down" because one of the support poles, though snapped at five to six feet above the ground level, was still standing. We cannot accept petitioner's position. Regardless of the cost, large or small, of re-erecting the sign, the sign was completely blown down by the wind within the meaning of the regulation. The regulation does not require that all support poles be broken off at ground level before the sign could not be re-erected. Indeed, such a requirement would contravene the purpose of the statute and *would render* the regulation useless.

Third, even assuming, *arguendo*, that subsections (12) and (13) do not apply, petitioner has failed to make any argument that either the sign was not "nonconforming" or that the sign was not "re-erected" after the storm. The definition of "erected" in 19 N.C.A.C. 2H.0109, *supra*, includes "raise," "assemble," "place," "affix," and "attach" — actions which were taken by petitioner in the instant case. Nor do we think that the re-erecting in the instant case was a mere "normal repair" within the exception to the definition. Subsection (6) of 19 N.C.A.C. 2H.0209, *supra*, specifically refers to *re-erecting* as opposed to merely *erecting* and no exception is made therein for re-erection of a nonconforming sign which has been taken down or has fallen down for any reason other than criminal or tortious acts. The obvious purpose of the statute and regulation is to gradually phase out signs, either individually or in the aggregate,

which existed at the time of enactment but which tended to harm the public interest and welfare by causing ugliness, distraction, and safety hazards along our State's primary highways. N.C. Gen. Stat. § 136-127. Whether the petitioner is entitled to compensation for the value of his lease, if any, or by N.C. Gen. Stat. §§ 136-111, -131, -132, -140, 19 N.C.A.C. 2H.0209(13), is not before us in this appeal.

The judgment of the Superior Court is

Reversed.

Chief Judge MORRIS and Judge ERWIN concur.