BRACEY ADVERTISING COMPANY, INC. v. NORTH CAROLINA DEPART-
MENT OF TRANSPORTATION AND NORTH CAROLINA BOARD OF
TRANSPORTATION

No. 8210SC526

(Filed 17 May 1983)

**Highways and Cartways § 2.1— Outdoor Advertising Control Act—nonconforming
use on effective date—vested right to complete signs**

Petitioner's outdoor advertising sign structures along a new segment of
I-95 were a nonconforming use on 15 October 1972, the effective date for the
enforcement of the Outdoor Advertising Control Act, such that petitioner had
a vested right to complete the signs where the ordinance setting the 15 Oc-
tober 1972 effective date for the enforcement of standards controlling outdoor
advertising was not adopted until 5 October 1972; prior to 15 October 1972
poles were in place for 19 signs but the sign facings and advertising had not
been added thereto; petitioner had obtained building permits for the 19 signs
from Robeson County; beginning in 1971, petitioner made searches for sign
sites along the unopened area of I-95, and before 1 June 1972 petitioner had
oral leases with landowners for the 19 sign locations and oral agreements for
advertising to be located on the 19 signs; beginning 18 August 1972 the
agreements with advertisers were reduced to writing, and beginning 15
September 1972 the leases were reduced to writing; and petitioner had in-
curred expenses prior to 15 October 1972 of $12,696.77 for poles, concrete to
implant poles, rent, employee's time for leasing, securing permits and advertis-
ing contracts, labor for transporting and implanting poles, and overhead. G.S.
136-134.1 and G.S. 136-131.

ON writ of certiorari to review Judgment entered by *Brannon, Judge.* Judgment entered 3 November 1981 in Superior Court, WAKE County. Heard in the Court of Appeals 12 April 1983.

*Attorney General Rufus L. Edmisten by Assistant Attorney General Thomas H. Davis, Jr., for respondent appellants.*

*McLean, Stacy, Henry & McLean by H. E. Stacy and William S. McLean for petitioner appellee.*

BRASWELL, Judge.

The facts relate to outdoor advertising signs on interstate highways. The law involves the subject of nonconforming use. The only question presented for review, as phrased by the respondent appellants, is: "Did the trial court err in ruling that as of October 15, 1972, the petitioner's sign structures were a nonconforming use such that petitioner had a vested right to build the subject outdoor advertising signs?" We find the trial judge ruled correctly.

Over the years Bracey Advertising Company, Inc. (hereafter called Bracey) has conducted its business of outdoor advertising on signs erected on poles along highways in Robeson County and elsewhere. A new segment of Interstate Highway 95 in Robeson County between Lumberton and the North Carolina-South Carolina State Line was opened to traffic on 15 December 1972. Previously, Bracey had contracts with existing customers who leased outdoor advertising signs along U.S. Highway 301, which ran parallel to the new and unopened segment of I-95. Bracey's clients desired to continue their advertising by contracting for new signs along the new segment of I-95. Certain preparations were made by Bracey for 19 new signs along I-95 before 15 October 1972. When the respondents learned of Bracey's activity, the Board of Transportation approved a resolution on 8 June 1979 directing Bracey to remove its outdoor advertising within 30 days and for the Department of Transportation to take whatever legal action was necessary to seek compliance with the order. It was Bracey's view that the resolution and order were erroneous, that the respondents were estopped, and that Bracey's prior activity vested it with the status of nonconforming use. Bracey petitioned for judicial review of the 8 June 1979 administrative order.

After an evidentiary hearing, the trial judge made extensive findings of fact and adjudged that Bracey's signs "constituted a non-conforming use and [Bracey's] rights therein were vested as of October 15, 1972. Respondents may not retroactively abrogate such rights." The judge also permanently restrained the respondents from enforcing the Board's order of 8 June 1979 as against Bracey.

Our review in this appeal is controlled by G.S. 136-134.1. *See Advertising Co. v. Bradshaw, Sec. of Transportation,* 48 N.C. App. 10, 268 S.E. 2d 816, *disc. rev. denied,* 301 N.C. 400, 273 S.E. 2d 446 (1980). G.S. 136-134.1 provides that the court may affirm, reverse or modify the decision if the decision is in violation of constitutional provisions, not made in accordance with D.O.T. regulations, or affected by other error of law. The basic facts are not in dispute. Respondents bring forward no exceptions to the trial judge's findings of fact. The respondents argue that the judgment is reversible because of errors of law: (1) the trial judge should not apply decisions relating to non-conforming use in the zoning laws to a situation controlled exclusively by the Outdoor Advertising Control Act; and (2) even if zoning case law should be applied, that the offending signs are unlawful and ought to be removed because Bracey had knowledge of the pendency of the Act when it performed its activity, that it knew the Act would go into effect when federal funds became available, that Bracey was put on notice that its sign activity might be curtailed in the future, and that Bracey raced to beat the clock and lost. We disagree on both arguments.

North Carolina's Outdoor Advertising Control Act was enacted in 1967. In its declaration of policy, G.S. 136-127 declares that "outdoor advertising is a legitimate commercial use of private property adjacent to roads and highways," and then declares a policy of regulation and control of same. In G.S. 136-128(2a) the article recites that a " 'Nonconforming sign' shall mean a sign which was lawfully erected but which does not comply with the provisions of State law or State rules and regulations passed at a later date or which later fails to comply with State law or State rules or regulations due to changed conditions. Illegally erected or maintained signs are not nonconforming signs."

Prior litigation established 15 October 1972 as the effective date for the enforcement of North Carolina's Outdoor Advertising Control Act. *Advertising Co. v. Dept. of Transportation,* 35 N.C. App. 226, 241 S.E. 2d 146, *disc. rev. denied,* 295 N.C. 89, 244 S.E. 2d 257 (1978). Another decision, *Days Inn v. Board of Transportation,* 24 N.C. App. 636, 640, 211 S.E. 2d 864, 867, *cert. denied,* 287 N.C. 258, 214 S.E. 2d 429 (1975), held that the Act "did not become effective on 17 July 1972."

What did Bracey do on or before 15 October 1972? Bracey's activity, fully supported in the record, follows: Commencing in 1971 and before, Bracey made searches for likely sign sites on I-95 in the area in question. Before 1 June 1972, Bracey had oral leases with landowners for the 19 sign locations [note: only 17 signs sites were in controversy at trial according to the parties' statements in the record] on the unopened segment of I-95. Beginning 15 September 1972 the oral leases were reduced to writing. Prior to 1 June 1972 Bracey had oral agreements with customers for advertising to be located on the 19 signs, and beginning 18 August 1972 these agreements were reduced to writing.

In 1971 Bracey incurred expenses relating to the search for sign sites including travel and salary of James L. Bracey, an officer and employee. Bracey would go to or near the unopened segment of highway, discover the person in possession, conduct a search of courthouse records to establish landowners, and would thereafter meet and negotiate with landowners. Bracey also incurred expenses in making contact with its advertising customers and securing contracts with them. Bracey erected sign support poles on or before 15 October 1972.

Applications for permits for the erection of the signs in question were made by Bracey to Robeson County, and prior to 15 October 1972 Robeson County issued building permits for the 19 signs. For these permits Bracey incurred an expense of $95.00, which was paid prior to 15 October 1972.

Other expenses incurred prior to 15 October 1972 were: cost of poles at 19 locations, $1,654.77; cost of concrete to implant poles, $627.00; rent, $1,100.00; time of James L. Bracey *re* leasing, securing permits and advertising contracts, approximately $1,200.00; labor for transporting and implanting the poles, $6,820.00; overhead expenses, $1,200.00; with a total expense in-

curred (including $95.00 for building permits) prior to 15 October 1972 of $12,696.77.

Between 15 October 1972 and March 1973 Bracey incurred expenses of $12,886.18 for completing the 19 signs. Bracey had not added facings and advertising messages to the signs as of 15 October 1972. The project had not been completed, and there was no traveling public on this segment of the highway to see any advertising signs until 15 December 1972. The project was not completed and accepted by the State Highway Commission until approximately 28 June 1973 to 28 July 1973.

What did the State Highway Commission (the predecessor of respondents) do prior to and soon after 15 October 1972? On 5 October 1972 the State Highway Commission revised its ordinance to hold that the effective date for the enforcement of standards controlling outdoor advertising was 15 October 1972. On 13 October 1972 the District Engineer of the State Highway Commission and his Assistant conducted an inventory of the highway segment in question and found numerous poles in place, but found no completed sign structures. On 16 October 1972 another inventory by the same persons found no change from the condition of the inventory of 13 October 1972. On 13 November 1972 three sign facings were found on poles in the questioned area.

A meeting of division engineers of the respondents was held on 27 September 1972. The memorandum calling the meeting was dated 13 September 1972. (Exhibit F of the pre-trial order.) It says: "The date of October 15, 1972, has been *tentatively* established as the effective date for implementation of our billboard permit program." (Emphasis added.)

At the 27 September 1972 meeting the District Engineers and Assistants were given a printed procedure which shows that they were to prepare "to be mailed on 6 October 1972" to each known sign owner a package which would include: "(a) Mimeographed letter of notification of permit requirement, (b) Outdoor Advertising Manual, (c) Sufficient applications for permits for each sign within your area." (Exhibit H of the pre-trial order.) On the subject of enforcement of permit requirements, the procedure stated:

"If an application for a permit to maintain an existing sign is not received by November 15, 1972, notification by certified

mail should be given the sign owner that the sign must be removed or a permit obtained. (A form letter is provided for this purpose). If the owner fails to act within say three weeks, you should take action to have the sign removed and line through the sign on your inventory form."

On 17 October 1972 Bracey received by hand delivery a letter dated 9 October 1972, along with applications for permits and a manual. In part, it stated that, "Effective October 15, 1972, permits are required to erect new sign structures in controlled areas and to maintain existing outdoor advertising signs." The letter gave a 30-day period within which to apply for permits or to remove signs.

On 1 December 1972 Bracey received formal notification from respondents that the 3 outdoor advertising structures discovered on 13 November 1972 were illegal and must be removed in 30 days. Thereafter a series of court petitions and orders occurred in various proceedings between the parties which culminated with the 8 June 1979 order of the respondents and the initiation of this case.

We recognize that in *Advertising Co. v. Dept. of Transportation, supra,* at 230, 241 S.E. 2d at 148, our Court said: "Those persons or parties, including petitioner [who is the same petitioner here], who erected outdoor advertising devices on or after 15 October 1972 without complying with the established standards did so at their peril." However, the statute recognizes that nonconforming signs due to changed conditions are lawful. In acknowledgment that the Department would be faced with nonconforming advertising, G.S. 136-131 provides a means of State removal by "purchase, gift, or condemnation."

The principles of law of nonconforming use that have been developed by our courts in the area of zoning law are applicable here. Typical of those decisions is *Town of Hillsborough v. Smith,* 276 N.C. 48, 55, 170 S.E. 2d 904, 909 (1969), which express the rules as follows:

". . . [O]ne who, in good faith and in reliance upon a permit lawfully issued to him, makes expenditures or incurs contractual obligations, substantial in amount, incidental to or as part of the acquisition of the building site or the construction

or equipment of the proposed building for the proposed use authorized by the permit, may not be deprived of his right to continue such construction and use by the revocation of such permit, whether the revocation be by the enactment of an otherwise valid zoning ordinance or by other means, and this is true irrespective of the fact that such expenditures and actions by the holder of the permit do not result in any visible change in the condition of the land."

In *Hillsborough* the defendant had acquired an option on a piece of land to build a dry cleaning plant. Defendant got a building permit, exercised its option, signed a $15,000.00 contract to build and ordered plant equipment. The town enacted a zoning ordinance 5 days later, restricting the area which included the site of the dry cleaning plant to residential use. Although the town revoked the permit, the defendant continued to build the plant. The Supreme Court upheld defendant's right to go forward, complete the construction, and use the property in accordance with the permit.

In *In re Campsites Unlimited*, 287 N.C. 493, 215 S.E. 2d 73 (1975), the question was whether Campsites had a vested right to continue its development after the passage of a zoning ordinance restricting development, when there was no prior ordinance requiring a permit to develop its property. In upholding Campsites' use of the property, the court compared case law in which building permits were a prerequisite in order to make any use lawful with the situation before it where there was no ordinance in effect which required a permit before development could be begun lawfully. The Court allowed Campsites to proceed with its construction and development by pointing out that a party may acquire a vested right without a permit where a permit is not required at the time of the good faith expenditure.

Here, Bracey obtained the only required permit, the one from Robeson County, prior to 15 October 1972. The ordinance, resolution, manual, or directive of the respondents did not require any permit prior to 15 October 1972.

We feel that the findings of fact of the trial judge supported by the evidence brings Bracey within the provisions of *Warner v. W & O, Inc.*, 263 N.C. 37, 43, 138 S.E. 2d 782, 786-87 (1964): "[t]he law accords protection to nonconforming users who, relying on

the authorization given them, have made substantial expenditures in an honest belief that the project would not violate declared public policy." It was not until 5 October 1972 that the ordinance was adopted declaring 15 October 1972 as the effective date of enforcement. Even as late as 13 September 1972, the memorandum of respondent, mentioned earlier above, referred to 15 October 1972 as "tentative." Also, the letter of notice and materials delivered to Bracey on 17 October 1972 allowed 30 days for applications for permits and even then gave alternative instructions should the applications not be received by respondents by 15 November 1972.

We do not feel, as apparently does appellant, that the facts show that respondent failed to act in good faith. *See Keiger v. Board of Adjustment*, 281 N.C. 715, 190 S.E. 2d 175 (1972). Bracey began its activities of site acquisition, began incurring expenses, began the placement of sign poles, and obtained the required county permits without actual knowledge of the 15 October 1972 date. It did not act hurriedly to beat a deadline. The ordinance setting the 15 October 1972 effective date was not adopted until 5 October 1972. Bracey had made a substantial beginning in good faith. It had earlier made substantial expenditures in reliance upon the nonexistence of any law requiring a sign permit from the respondents and in reliance of having obtained the required county permits.

The State's public policy to proscribe outdoor advertising sign activity did not become policy until 15 October 1972. Mere knowledge that at some future time an outdoor advertising ordinance would be enacted is not sufficient to prohibit Bracey's activity prior to 15 October 1972 because all advertisers who did complete their signs prior to 15 October were not violating any ordinance. Had Bracey completed its sign facing prior to 15 October, apparently no lawsuit would have resulted. Bracey has successfully brought itself within the meaning of, and compliance with, the principles of law of the *Hillsborough, Warner* and *Keiger* cases.

Affirmed.

Judges WEBB and WHICHARD concur.