360

641 A.2d 630

**Martin MEDIA, Petitioner,**

v.

**DEPARTMENT OF TRANSPORTATION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Dec. 16, 1993.

Decided April 13, 1994.

Publication Ordered May 18, 1994.

James J. Gillotti, for petitioner.

Frank M. O'Neill, Asst. Counsel, for respondent.

Before COLINS and FRIEDMAN, JJ., and DELLA PORTA, Senior Judge.

FRIEDMAN, Judge.

Martin Media (Petitioner) appeals from an order of the Pennsylvania Department of Transportation (DOT) which affirmed revocation of Petitioner's outdoor advertising permit for a nonconforming sign which had been damaged in a storm on January 6, 1992. We reverse.

The Outdoor Advertising Control Act, Act of 1971, P.L. 596, *as amended,* 36 P.S. §§ 2718.101—2718.115 (Act) limits outdoor advertising signs to commercially or industrially zoned areas. Martin Media's sign, which pre-dated the Act, was located in a residentially zoned district and, pursuant to the Act and its corresponding regulations, is a nonconforming

sign. 67 Pa.Code § 445.2. On January 6, 1992, a storm swept through the area, damaging this sign; some of the sign's supports were broken and others pulled from the ground, but the sign faces appeared to be virtually undamaged. Shortly after the storm and prior to DOT's viewing of the site, Martin Media arranged for clean-up of the debris and removal of the sign face from the supports. On January 16, 1992, a DOT employee inspected the site and took pictures. At that time, the remaining parts of the sign were neatly stacked; no sign was standing. DOT revoked the sign permit, determining that because less than 50% of the sign remained intact after the storm, Martin Media could not repair or replace it. Martin Media requested a departmental hearing, contending that more than 50% of the sign remained intact so that repair and continued use are permitted. Following the hearing, the Department Hearing Officer issued a proposed report, which was made final by the Secretary of Transportation, affirming the permit revocation.

The Act is administered by DOT which has adopted implementing regulations. Section 6 of the Act, 36 P.S. § 2718.106. The regulation governing nonconforming signs, found at 67 Pa.Code § 445.7, provides in pertinent part:

(b) *Nonconforming signs.* Nonconforming signs shall conform with the following:

(1) If a sign is damaged or destroyed as a result of tortious conduct such as vandalism, the sign may be repaired or replaced by the sign owner.

(2) If a sign is damaged as a result of natural disaster or nontortious conduct *so that 50% or more of its value remains intact,* the sign may be repaired by the sign owner.

(3) The following regulations shall apply to signs damaged or destroyed as provided in paragraphs (1) and (2):

(i) Determination of the value of the sign and the damage shall be made by the Department.

(ii) Replaced or repaired signs shall be of equal or lesser dimensions and constructed of the same or less

durable material than the sign being replaced or repaired and shall contain no improvements or additions.

(iii) If a sign is replaced the replacement sign shall remain at the same location.

(iv) If a sign is destroyed or damaged as a result of natural disaster or other nontortious conduct *so that less than 50% of the sign remains intact,* the sign may be repaired or replaced only in compliance[1] with the provisions of this chapter. Determination of the value of the sign and the damage shall be made by the Department.

(v) Damaged or destroyed signs not replaced or repaired within 60 days of notice from the Department shall be considered abandoned.

(Emphases added.)

■ On appeal,[2] we address whether DOT correctly determined that less than 50% of the structure remained intact, thus precluding Petitioner from repairing or rebuilding the sign in the residentially zoned area in which it was located.

Martin Media asserts that DOT has applied its regulation incorrectly and that repairs in this location are precluded only if the cost of repairing the sign is more than 50% of its replacement value. This interpretation is supported by subsection 2 of the regulation, 67 Pa.Code § 445.7(b)(2), which clearly refers to loss of value and by the federal regulation which also refers to loss of value.[3] DOT, however, responds

1. The Act permits outdoor advertising devices in commercial and industrial areas within 660 feet of interstate highways. Section 4 of the Act, 36 P.S. § 2718.104. Because this nonconforming sign had been located in a residential area, DOT asserts that it cannot be made to comply with the Act and cannot be rebuilt.

2. Our scope of review of a DOT determination is limited to determining whether constitutional rights have been violated, whether an error of law exists or whether any finding of fact made by DOT and necessary to support its adjudication is not supported by substantial evidence. *Miller's Smorgasbord v. Department of Transportation,* 139 Pa.Commonwealth Ct. 385, 590 A.2d 854 (1991).

3. 23 C.F.R. § 750.707(6)(i) (1993) provides:

Each state shall develop criteria to define destruction, abandonment and discontinuance. These criteria may provide that a sign which for a designated period of time has obsolete advertising matter or is

that "intact" also has a physical aspect, reflected in subsection 3(iv) of the regulation, 67 Pa.Code § 445.7(b)(3)(iv), and that because DOT determined that less than 50% of the physical structure of this sign remained intact after the storm, it could not be rebuilt in this location.

The regulation is not a model of clarity in that it fails to state whether intactness is always to be determined in relation to value or whether some other factor may be relevant to the determination. However, DOT's interpretation of its own regulations is controlling unless plainly erroneous or inconsistent with the statute under which it was promulgated. *George Washington Motor Lodge Company v. Department of Transportation*, 118 Pa.Commonwealth Ct. 552, 545 A.2d 493 (1988). Our analysis of this regulation convinces us that DOT's interpretation that intact can have both financial and physical components is neither plainly erroneous nor inconsistent with the statute under which it was promulgated. Subsection (3)(iv) of the regulation, 67 Pa.Code § 445.7(b)(3)(iv), can be read to provide that even when 50% or more of the sign's *value* remains intact, any repaired sign must be in compliance with the regulations governing outdoor advertising devices if less than 50% *of the sign* remains intact. This subsection also provides that the determination *of the value* of the sign and *the damage* is to be made by DOT. Thus, we accept DOT's position that the regulation determines damage from a natural disaster in two ways, one financial and one physical.[4]

without advertising matter or is in need of substantial repair may constitute abandonment or discontinuance. Similarly, a sign damaged in excess of a certain percentage of its replacement cost may be considered destroyed.

4. Such an interpretation of the regulation is consistent with the intent of the Act, which was enacted pursuant to the Federal Highway Beautification Act, 23 U.S.C. § 131 (Highway Beautification Act). When it enacted the Highway Beautification Act in 1965, Congress found and declared that

the erection and maintenance of outdoor advertising signs, displays, and devices in areas adjacent to the Interstate System and the primary system should be controlled in order to protect the public

However, our conclusion that damage may be measured in both financial and physical ways does not end our inquiry. Despite finding that only "[s]ome of the twelve uprights were broken and some were pulled from the ground [and that] [t]he faces of the signs appeared to be virtually undamaged," (Findings of Fact, Nos. 7 and 8), the Department Hearing Officer agreed with DOT's assertion that less than 50% of the sign remained physically intact. (Conclusion of Law, No. 3.) We cannot agree.

 Even applying DOT's analysis, the sign must still be less than 50% intact physically for the permit to be revoked. DOT, construing the word "intact" to mean "upright, in place and uninjured or not damaged," argues that the sign is less than 50% intact.[5] However, neither the Act nor the regulation defines the word "intact." Where a word is not defined and where, as here, it does not have a recognized technical meaning, we must construe it according to its common and approved usage. 1 Pa.C.S. § 1903. The common, ordinary meaning of "intact" is "untouched esp. by anything that harms or diminishes: left complete or entire: UNINJURED." Webster's Third New International Dictionary 1173 (1986). As commonly used, the sign would be considered sufficiently

investment in such highways, to promote the safety and recreational value of public travel, and to preserve natural beauty.
Section 131(a) of the Highway Beautification Act. States which failed to comply with the Highway Beautification Act faced a reduction in federal highway funding. The federal regulation provides states with discretion to permit pre-existing signs which do not comply with the provisions of state law and regulations to remain for the duration of their normal life. The federal regulation then requires the state to develop criteria to determine when the normal life has ended due to destruction, abandonment or discontinuance but gives the individual state discretion as to what criteria it uses to define destruction, abandonment or discontinuance. *See*, generally, 23 C.F.R. § 750.707 (1993). For differing considerations used in other states, *see National Advertising Co. v. Bradshaw*, 48 N.C.App. 10, 268 S.E.2d 816, *appeal dismissed*, 301 N.C. 400, 273 S.E.2d 446 (1980) (initial value) and *Alabama Highway Department v. Stuckey's/DQ of Grand Bay, Inc.*, 613 So.2d 333 (Ala.1993) (visual appearance). *See also*, 27 CFR § 750.707(6)(i) (replacement value).

5. Because there is, apparently, no dispute as to the percentage of the sign's value that remained, repair is precluded only if less than 50% of the *physical* sign remained intact after the storm.

"intact" to retain its nonconforming status if 50% of the sign face and structure, combined, were not damaged. However, by adding the concepts "upright" and "in place" to the meaning of "intact," DOT expands the definition of the word beyond its commonly accepted meaning. DOT is charged with determining whether the *damage as a result of the storm*, not as a result of clean up or repair efforts, *is such that less than 50% of the sign remains intact.* Yet, because DOT did not view the site for 10 days, DOT viewed a cleaned up site. DOT's definition of "intact" could frustrate an owner's reasonable clean-up or repair efforts [6] by creating the possibility that those efforts, rather than the damage caused by the storm, would result in loss of the sign's nonconforming status. Such a result is contrary to common sense and to the public interest. Thus, we cannot allow DOT to expand the common, ordinary meaning of "intact" to include the concepts of "upright" and "in place."

Absent DOT's overly broad construction of the word "intact," no findings support the conclusion that "less than 50% of the sign remained intact." Accordingly, we reverse.

### *ORDER*

AND NOW, this 13th day of April, 1994, the Final Order of the Secretary of Transportation, dated March 30, 1993, is reversed.

---

**6.** Such efforts include prompt action to clean up debris and eliminate hazards associated with broken or cracked supports.