IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Core Equity II, L.P., 114 Chestnut : 
Street, Philadelphia, Pennsylvania : 
19105 and Delaware Ave Outdoor, : 
LLC, 3400 West Chester Pike, : 
Suite 100 Newtown Square, : 
Pennsylvania 19073, : 
  : 
                    Petitioners : 
  : 
           v. : No. 257 M.D. 2017
  : Argued: March 6, 2018
Commonwealth of Pennsylvania, : 
Department of Transportation, : 
700 Geerdes Boulevard, : 
King of Prussia, Pennsylvania 19406, : 
  : 
              Respondent : 

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE P. KEVIN BROBSON, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                FILED: August 14, 2018

Before the Court is the application for summary relief filed by the Pennsylvania Department of Transportation (DOT) to the petition for review seeking declaratory relief filed in our original jurisdiction by Core Equity II, L.P. (Core) and Delaware Ave Outdoor, LLC (Delaware) (collectively, Petitioners). We deny the application.

The petition for review alleges the following, in relevant part. Pursuant to Section 131 of the federal Highway Beautification Act,[1] states are required to maintain effective control of outdoor advertising devices (OADs) along federal highways. On June 10, 1974, DOT's Secretary certified to the Secretary of the United States Department of Transportation that the City of Philadelphia (City) had established sufficient and acceptable regulations concerning OADs, and that certification was formalized in an agreement between DOT and the City on July 1, 1974. Based on the certification, the City's regulations, together with the City's

---

[1] 23 U.S.C. §131. As this Court has explained:

> When it enacted the Highway Beautification Act in 1965, Congress found and declared that
>
>> the erection and maintenance of outdoor advertising signs, displays, and devices in areas adjacent to the Interstate system and the primary system should be controlled in order to protect the public investment in such highways, to promote the safety and recreational value of public travel, and to preserve natural beauty.
>
> Section 131(a) of the Highway Beautification Act[, 23 U.S.C. §131(a)]. States which failed to comply with the Highway Beautification Act faced a reduction in federal highway funding. [*See* Section 131(b) of the Highway Beautification Act, 23 U.S.C. §131(b).] The federal regulation provides states with discretion to permit pre-existing signs which do not comply with the provisions of state law and regulations to remain for the duration of their normal life. The federal regulation then requires the state to develop criteria to determine when the normal life has ended due to destruction, abandonment or discontinuance but gives the individual state discretion as to what criteria it uses to define destruction, abandonment or discontinuance. *See, generally*, 23 C.F.R. §750.707 (1993). . . .

*Martin Media v. Department of Transportation*, 641 A.2d 630, 632, n.4 (Pa. Cmwlth. 1994).

2

operating procedures for issuing permits,[2] supplanted DOT's jurisdiction over OADs in the City as conferred by the Pennsylvania Outdoor Advertising Control Act of

---

[2] Section 9-602(3) and (4) of the Philadelphia Code states, in relevant part:

(3) No person shall erect or maintain any outdoor advertising sign unless he or she has obtained a license for such sign from the Department. Applications for such licenses shall be made on a form provided by the Department. Such licenses shall be issued and renewed for terms of five years. A single license shall be issued for multiple signs that share a common sign support structure.

(4) *Licenses for Outdoor Advertising Signs*. No license shall be issued or renewed unless:

(a) The Department finds that the outdoor advertising signs and their sign support structures, if any, which are proposed to be erected or which are erected or maintained are to be, or have been constructed in conformity with all codes and that all proper permits, including any required zoning permits, have been secured.

(b) To the extent that the applicant . . . proposes to erect or maintain a sign or sign structure which extends in any manner into or above a public street, highway or right-of-way, the applicant . . . agrees to comply with the terms of the license and to indemnify the City against any liability by reason of granting the license, and files a continuing bond for the sign satisfactory to the Law Department, and obtains any necessary approval from City Council for an encroachment into the public right-of-way.

(c) The applicant pays a license fee . . . .

(d) The applicant submits to the Department with its license application an inventory listing each outdoor advertising sign structure that the applicant owns or maintains in the City. . . .

(e) The applicant does not have any outstanding violations, for which all legal appeals have been exhausted, nor any outstanding court orders requiring the removal of any sign(s) for which all legal

3

1971 (Act).[3]  On April 13, 2015, DOT revoked the City's certification transferring jurisdiction under the Act to DOT.

_____

appeals have been exhausted, for erecting and/or maintaining outdoor advertising signs in violation of The Philadelphia Code.

  (f)  The applicant . . . affixes on each sign and/or sign structure information indicating the owner of the sign and (if applicable) the individual or company responsible for erecting and/or maintaining the sign and/or sign structure.

  (g)  The applicant, the owner of the sign, and the owner of the premises upon which the sign is placed or to be placed are current in the payment of all City and School District taxes or have entered into an agreement(s) to pay any delinquent taxes and are abiding by the terms of such agreement(s).

Phila., Pa. Code §9-602(3)-(4) (2005, 2015).

[3] Act of December 15, 1971, P.L. 596, *as amended*, 36 P.S. §§2718.101-2718.115.  Section 5(b) and (d) of the Act states, in relevant part:

(b)  In zoned commercial or industrial areas, the secretary may certify to the Secretary of Transportation of the United States as notice of effective control, that there has been established within such areas regulations which are enforced with respect to the size, lighting and spacing of outdoor advertising devices.  In such areas, the size, lighting and spacing requirements set forth below shall not apply.

\* \* \*

(d) . . . At any time, that a political subdivision adopts regulations which include the size, spacing and lighting of outdoor advertising devices, the secretary may so certify to the Secretary of Transportation of the United States and control of outdoor advertising in commercial or industrial areas will transfer to subsection (b) under this section.

36 P.S. §2718.105(b), (d).

4

Core is a limited partnership that owns a building located at 1000 Frankford Avenue in the City. On March 17, 2015, prior to the revocation of the certification, the City issued Permit No. 596034 (OAD Permit), approving Core's application to construct three 14' by 48' accessory digital rooftop OADs[4] to display advertising on its property along Interstate 95. On November 12, 2015, the City issued Building Permit No. 645378 to construct two rooftop OADs on the property and construction of the OADs was completed prior to February 22, 2016.

On July 16, 2015, Core and Delaware entered into a Digital Display Lease Agreement (Agreement) under which Core leased office space in the building and a portion of the building rooftop for the construction, maintenance, operation, and leasing of OADs to Delaware. Delaware spent $975,000.00 to design, plan, and construct the OADs. Per the Agreement, Delaware subleased office space to third parties in the building that also had the right to use the OADs to advertise their businesses. When in operation, the OADs display advertising relating to the businesses of the sublessees.

---

[4] Section 9-602(2)(a) of the Philadelphia Code defines "Accessory Sign" as follows:

> A sign which directs attention to information, identification, or advertisements strictly incidental to a lawful use of the premises on which it is located. This includes signs or devices indicating the business transacted, services rendered, goods sold, or produced on the premises; and, name or emblem of a person, firm, institution, organization or activity occupying the premises.

Phila., Pa. Code §9-602(2)(a) (2005). In turn, Section 9-602(2)(c) defines "Non-Accessory Sign" as "[a] sign which directs attention to a business, industry, profession, commodity, service organization, activity, institution, business, product or entertainment neither sold, located nor offered upon the property where the sign is situated." Phila., Pa. Code §9-602(2)(c) (2005).

On December 3, 2015, the Federal Highway Administration approved DOT's transition plan to take control of the review, approval, and permitting of OADs adjacent to state and federal highways in the City away from the City. As part of the transition plan, DOT was required to create an inventory of existing signs that are adjacent to state and federal highways in the City prior to July 1, 2016.

On February 22, 2016, Core submitted an application to DOT for an on-premise OAD[5] with respect to the existing OADs as part of DOT's duty to create

_____

[5] Section 6 of the Act states, in pertinent part, that "[t]he secretary is authorized to promulgate rules and regulations governing [OADs] . . . ." 36 P.S. §2718.106. The regulations promulgated under Section 6 of the Act are found at 67 Pa. Code §§445.1–445.9. Section 445.5(a) of DOT's regulations, relating to on-premise OADs, states that "[t]his section applies to signs which: (1) Advertise the sale or lease of the premises on which they are located[; and] (2) Advertise activities conducted on the premises on which they are located." 67 Pa. Code §445.5(a). In turn, Section 445.2 defines "premises," in relevant part, as follows:

> The property upon which the activity is conducted as determined by physical facts rather than property lines. It is the land occupied by the buildings or other physical uses that are necessary or customarily incident to the activity. . . . The following are not considered to be a part of the premises on which the activity is conducted, and any signs located on the land are to be considered off-premise advertising:
>
>  (i) Land which is not used as an integral part of the principal activity, including land which is separated from the activity by a roadway, highway or other obstruction, and not used by the activity . . . .
>
>  (ii) Land which is used for, or devoted to, a separate purpose unrelated to the advertised activity.
>
>  (iii) Land which is more than 100 feet from the principal activity, and in closer proximity to the highway than to the principal activity, and developed or used only in the area of the sign site or between the sign site and the principal activity and whose purpose is for advertising purposes only.

a database of OADs in the City under the transition plan.[6]  On April 13, 2016, DOT denied the application because the OAD did not qualify as an on-premise OAD under DOT's regulations because it displayed off-premise advertising.

As a result, on April 12, 2017, Core appealed the denial of the on-premise application to DOT's Administrative Docket and a hearing was scheduled for April 24, 2017.  However, on April 21, 2017, Core withdrew the appeal and requested that the matter be discontinued; DOT's hearing officer issued an order cancelling the hearing and marking the matter as discontinued and ended.

On May 2, 2017, Core submitted an application for a nonconforming[7] off-premise OAD.  DOT denied the application on May 12, 2017, and directed that

---

67 Pa. Code §445.2.

[6] *See also* Section 7 of the Act, 36 P.S. §2718.107 ("An annual permit shall be required for each [OAD] regulated by this act and located outside the limits of those incorporated municipalities that have legally established and operating procedures for issuing permits for such [OADs] which have been certified by the secretary as conforming to the provisions of subsection (d) of section 5 of this act."); Section 445.6(a)(4) of DOT's regulations, 67 Pa. Code §445.6(a)(4) ("An annual permit shall be required for signs regulated under the act and this section, including . . . [s]igns prohibited to be erected or maintained under section 4 of the act (36 P.S. §2718.104), until such time as each sign has been removed; provided, however, that a permit may not be required for signs in commercial or industrial zones, certified by the Secretary to the Secretary of Transportation of the United States under section 5(b) and (d) of the act (36 P.S. §2718.105(b) and (d)), if the local political subdivision has a legally established and operating procedure for issuing the permits.").

[7] "Nonconforming signs" are those which were legal when erected but which do not now conform to the requirements of the Act.  *Mike's Sign Company v. Department of Transportation*, 642 A.2d 634, 635 n.2 (Pa. Cmwlth. 1994).  *See also* Section 445.2 of DOT's regulations, 67 Pa. Code §445.2 (defining "nonconforming sign" as "[a] sign which was legally erected but which does not conform to the requirements of the act"); Section 750.707(b) of the federal regulations, 23 C.F.R. §750.707(b) (defining "nonconforming sign" as "a sign which was lawfully erected but does not comply with the provisions of State law or State regulations passed at a later date or later fails to comply with State law or State regulations due to changed conditions").

the OADs be removed in 30 days. On June 12, 2017, Core appealed the denial of the off-premise application to DOT's Administrative Docket and the appeal is pending.

On June 9, 2017, Core then filed the instant petition for review[8] seeking an order declaring: (1) the OAD Permit was timely and lawfully obtained from a certified and authorized City department; (2) the OAD Permit satisfies all applicable statutory and regulatory requirements for the erection and operation of OADs in the City; (3) Petitioners have legally vested rights to own, maintain, and operate the accessory OADs consistent with the OAD Permit; (4) DOT must recognize Petitioners' vested rights with respect to the OADs; and (5) the continued use of the OADs under the OAD Permit is a preexisting, lawful, nonconforming use to the extent that they do not conform to DOT's regulations.

On July 20, 2017, DOT filed an Answer and New Matter arguing, *inter alia*, that this Court was without jurisdiction to entertain Core's declaratory judgment action because Core failed to exhaust its available and adequate administrative remedy with respect to the OADs. On October 10, 2017, DOT filed the instant application for summary relief,[9] again seeking dismissal of Core's petition

---

[8] The purpose of the Declaratory Judgments Act (DJA), 42 Pa. C.S. §§7531-7541, "is to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations" between parties and, to that end, "is to be liberally construed and administered." Section 7541(a) of the DJA, 42 Pa. C.S. §7541(a); *Fidelity Bank v. Pennsylvania Turnpike Commission*, 444 A.2d 1154, 1159 (Pa. 1982).

[9] Pa. R.A.P. 1532(b) states, "At any time after the filing of a petition for review in an . . . original jurisdiction matter the court may on application enter judgment if the right of the applicant thereto is clear." "An application for summary relief is to be granted only if there are no material factual disputes and the movant's entitlement to relief is clear. In the determination, the factual averments and the existing record are assessed in the light most favorable to the nonmoving party." *Northwestern Youth Services, Inc. v. Department of Public Welfare*, 66 A.3d 301, 309 n.11 (Pa. 2013) (citations omitted).

for review based on Core's failure to exhaust its available and adequate administrative remedy with respect to DOT's denial of its permit application and asserting that Core has no claim for "vested rights" in a DOT permit that it has never obtained.

As the Supreme Court has explained:

> The doctrine of exhaustion of administrative remedies requires a party to exhaust all adequate and available administrative remedies before the right of judicial review arises. The doctrine is a court-made rule intended to prevent premature judicial intervention into the administrative process. A court is "[t]o defer judicial review where the question presented is one within an agency specialization and where the administrative remedy is likely to produce the desired result." The doctrine operates as a restraint on the exercise of a court's equitable powers and a recognition of the legislature's direction to comply with statutorily-prescribed remedies.

*Empire Sanitary Landfill, Inc. v. Department of Environmental Resources*, 684 A.2d 1047, 1053 (Pa. 1996) (citations omitted).[10] "Moreover, as [the Supreme Court] recognized in *Borough of Green Tree* [*v. Board of Property Assessments, Appeals and Review of Allegheny County*, 328 A.2d 819, 824 (Pa. 1974)], the rule requiring the exhaustion of statutory remedies need not apply where 'the administrative

---

[10] *See also Gardner v. Department of Environmental Resources*, 658 A.2d 440, 445 (Pa. 1995) ("Exhaustion, however, is more concerned with agency autonomy, requiring resort to administrative processes so as to assure that agency decision making is not unduly disrupted. The exhaustion doctrine is a rule of judicial administration created under the inherent powers of the court which has since been incorporated in legislation requiring that statutorily prescribed remedies be strictly pursued. The doctrine of exhaustion prohibits prospective parties to administrative agency actions from bypassing that process and challenging the administrative action directly in the courts. The reasons for requiring exhaustion are that it is more efficient to allow an agency to proceed uninterrupted until its conclusion so that it can find facts, apply its expertise and exercise its discretion. The doctrine also allows agencies the opportunity to correct their own mistakes.") (citations omitted).

process has nothing to contribute to the decision of the issue and there are no special reasons for postponing its immediate decision.'" *Office of the Governor v. Donohue*, 98 A.3d 1223, 1235 (Pa. 2014).

In this case, Core is seeking declaratory relief regarding the rights that were obtained under the OAD Permit and the Building Permit that the City issued pursuant to its prior authority to control the review, approval, and permitting of OADs in the City, and the current status of the instant OADs constructed thereunder, before the Federal Highway Administration approved the transfer of such authority and regulation to DOT. With respect to the OAD Permit that the City validly issued herein, pursuant to Section 9-602(3) of the Philadelphia Code, "[s]uch licenses shall be issued and renewed for terms of five years," Phila., Pa. Code §9-602(3) (2005), so the OAD Permit at issue is initially valid until March 2020 and not due for renewal until that time. Additionally, Section 9-602(4)(a) of the Philadelphia Code states, in relevant part, "No license shall be issued or renewed unless . . . [t]he Department finds that the Outdoor advertising signs and their sign support structures, if any, which are proposed to be erected or which are erected or maintained are to be, or have been constructed in conformity with all codes and that all proper permits, including any required zoning permits, have been secured." Phila., Pa. Code §9-602(4)(a) (2015). Further, Section 9-602(9)(a) provides that "whenever any sign is erected and/or maintained in violation of the provisions of this Chapter or of the regulations promulgated under it, the Department of Licenses and Inspections shall serve written notice of such violations upon the violator, directing compliance within thirty (30) days of the receipt of the notice of violation." Phila., Pa. Code §9-602(9)(a) (2005).

10

Because DOT was not the entity empowered to determine whether the City's OAD Permit and Building Permit should have been issued in the first instance under the Philadelphia Code, or whether the OADs constructed thereunder complied with the relevant provisions of the Philadelphia Code, or what rights were conferred thereby, "'the administrative process has nothing to contribute to the decision of the issue and there are no special reasons for postponing its immediate decision.'" *Donohue*, 98 A.3d at 1235. In sum, DOT's disposition of Core's applications for permits for either on-premise or off-premise OADs through its application of the relevant provisions of the Act and its own regulations do not resolve the ultimate questions at issue in the instant petition for declaratory relief relating to the provisions and application of the Philadelphia Code, so the exhaustion doctrine does not preclude the instant action in this Court.[11]

Accordingly, the application for summary relief is denied.

MICHAEL H. WOJCIK, Judge

---

[11] DOT's reliance on *Philadelphia Outdoor Advertising v. Department of Transportation*, 690 A.2d 789 (Pa. Cmwlth. 1997), *Besko Outdoor Media v. Department of Transportation* (Pa. Cmwlth., No. 316 M.D. 2017, filed October 19, 2017), and *Rusek v. Department of Transportation* (Pa. Cmwlth., No. 459 C.D. 2008, filed August 29, 2008), is misplaced. Unlike the instant matter, none of those cases involved the issuance of an existing valid OAD Permit and a Building Permit by a local political subdivision under its own ordinance to which DOT had ceded control of OADs pursuant to Section 5 of the Act.

11

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Core Equity II, L.P., 114 Chestnut : 
Street, Philadelphia, Pennsylvania : 
19105 and Delaware Ave Outdoor, : 
LLC, 3400 West Chester Pike, : 
Suite 100 Newtown Square, : 
Pennsylvania 19073, : 
                    : 
             Petitioners : 
                    : 
           v. : No. 257 M.D. 2017
                    : 
Commonwealth of Pennsylvania, : 
Department of Transportation, : 
700 Geerdes Boulevard, : 
King of Prussia, Pennsylvania 19406, : 
                    : 
              Respondent :

# **O R D E R**

AND NOW, this 14<u>th</u> day of <u>August</u>, 2018, the Application for Summary Relief of the Commonwealth of Pennsylvania, Department of Transportation, is DENIED.

_____
MICHAEL H. WOJCIK, Judge